UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

DR. T., NURSE L., HOSP. CLERK        :
M., and HEALTH UNIT COORDINATOR L.   :
                                     :
        *Plaintiffs*                 :
                                     :
                                     :
        v.                           :        C.A. No.: 1:21-cv-
                                     :
NICOLE SCOTT ALEXANDER, in her       :
official capacity as Director of the Rhode :
Island Department of Health, and     :
DANIEL J. MCKEE in his official capacity :
as Governor of the State of Rhode Island. :
                                     :
        *Defendants*                 :

## VERIFIED COMPLAINT

## INTRODUCTION

On September 21, 2021, the Governor agreed that: "Healthcare workers have

been the heros of Rhode Island's Covid-19 pandemic by consistently putting the health

and safety of their patients first." For the entire pandemic, these heros did so without

being forced to vaccinate against their will – and they did so without putting the health

and safety of their patients at risk. Plaintiffs here, and others like them, wish to continue

to serve their patients – and do so in a time of a shortage of health care workers in our

State. They ask only that their federal right to a religious exemption and reasonable

accommodation be considered on the same basis as a medical exemptions (*i.e.,* testing, and

masking, not forced vaccination). Rhode Island stands nearly alone in even attempting to

outlaw this right.

Across the country, no other state (except Maine – which is under challenge; and

New York where a federal court issued an injunction against the mandate) outlaws

consideration by employers of the sincerely held religious objections of its health care workers to mandatory vaccination. Rhode Island is not an island unto itself. If across America religious exemptions can be accommodated consistent with patient safety, then as a matter of law and logic, the same applies here. It is not an undo burden to treat religious exemptions the same as medical exemptions. By passing a regulation that refuses to to this, Rhode Island runs afoul of Title VII and the Constitution. Indeed, in a legally indistinguishable case, the federal District Court for the Northern District of New York recently enjoined New York's attempt to outlaw religious exemptions to its vaccine mandate for health care workers, with a Decision on a preliminary injunction promised by October 12th.

Plaintiffs – who bring this action under pseudonyms on the basis set forth herein – assert and allege as follows:

1. This complaint seeks immediate injunctive and declaratory relief from a Rhode Island Department of Health ("DOH") Emergency Regulation 216-RICR-20-15-8 promulgated on August 17, 2021, which regulation mandates full Covid-19 vaccination of all health care health care workers and providers in Rhode Island by October 1, 2021 – with no exception for a worker's sincerely held religious beliefs that compel the refusal of such vaccination (the "Vaccine Mandate" or "Regulation") (Attached as *Exhibit A*).

2. The Regulation makes exception only for "medical reasons," and not for sincerely held religious beliefs against Covid-19 vaccination.

3. Presently, and until October 1st, the Regulation provides for patient safety by requiring that all unvaccinated health care workers wear procedure mask (KN95 or N95) while inside a health care facility and get tested for Covid-19 at least two times a week.

4. On October 1, those with a medical exemption from the Vaccine Mandate simply continue to follow a mask and testing opt-out.  The Regulation, however. does not allow those seeking a religious exemption to follow the same protocol in lieu of vaccination.  As stated by the DOH – "The sole exemption in the regulation is a medical exemption."

5. Both medical and religious Vaccine Mandate exemptions are required under the Constitution and federal law.

6. There is also no mask and testing opt-out for those previously infected with Covid-19 – including Plaintiffs seeking a religious exemption and who were also previously infected – even though there exists overwhelming evidence that the natural immunity gained from prior infection with Covid-19 provides at least equal (and likely far superior) protection than Covid-19 vaccination.

7. According to the latest publically available DOH statistics, for the months of July and August during the delta variant, some 27.3% (157/576) of all Covid-19 hospitalizations were persons who had been fully vaccinated.  Additionally, 47.2% of all Covid-19 deaths (17/36)) were persons who had been fully vaccinated.  With cases, some 31.8% (3,333/10,467) were from people who are fully vaccinated.[1]  Based upon DOH's own Rhode Island data during the Delta variant, vaccination does not guaranty protection from death, hospitalization or even catching Covid-19, such that it would create an undo burden to reasonably accommodate (masking/testing) health care workers who hold a

---

[1] Https://www.andrewbostom.org/2021/09/prior-infection-vaccination-status-and-age-stratified-rhode-island-department-of-health-july-and-august-2021-data-on-covid-19-infections-hospitalizations-and-deaths-sent-to-sen-delacruz-and-rep/

sincerely held religious belief against Covid-19 vaccination.

8. Plaintiffs move for an emergency temporary restraining order – as well as a preliminary injunction – due to the imminent and irreparable harm resulting from the October 1, 2021 Vaccine Mandate deadline. Indeed, at least one Plaintiff (and upon information and belief, many more health care workers), have already been terminated by their health care facility, which has denied their requested religious exemption based upon the Vaccine Mandate. Other Plaintiffs have been advised they would be terminated by October, as a direct result of the Vaccine Mandate's refusal to allow health care providers to an exemption to the Vaccine Mandate, as required by federal law – despite the fact that their religious beliefs compel abstention from COVID-19 vaccination. Plaintiffs will suffer loss of employment, their license to practice medicine and their professional and personal standing in their community.

9. Moreover, the Rhode Island Department of Labor has indicated that health care workers whose employment is terminated because of refusal to follow the Vaccine Mandate would not be entitled to unemployment compensation, as DOL considered the Vaccine Mandate "a reasonable job requirement."

10. As such, Plaintiffs face the imminent threat of job loss, without any right to collect unemployment, the loss of their medical license, and an inability to work at any heath care facility in the State.

## JURISDICTION AND VENUE

11. This action arises under the First and Fourteenth Amendments to the United States Constitution and is brought pursuant to 42 U.S.C. § 1983. Other federal statutes;

namely, 42 U.S.C. § 1985(3) and 42 U.S.C. § 2000e-2 are also implicated.

12. Jurisdiction is conferred by 28 U.S.C. § 1331 and § 1343.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the defendants reside in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

13. This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, as implemented through Rule 57 of the Federal Rules of Civil Procedure.

14. Rule 65 of the Federal Rules of Civil Procedure authorizes this Court to grant Plaintiffs' requests for temporary, preliminary and permanent injunctive relief.

15. Plaintiffs' request for costs and a reasonable attorney fee is authorized by is authorized by 42 U.S.C. § 1988.

## PARTIES

16. Plaintiffs herein are health care providers and workers whose sincerely held religious beliefs compel them to refuse vaccination with available Covid-19 vaccines – all of which employ aborted fetus cell lines in their testing, development or production.

17. Nurse L. is employed by Lifespan.  She applied for a religious exemption, which was denied by Lifespan, which stated, *inter alia,* that "[w]hile Lifespan was initially prepared to consider exemptions on religious grounds, the RI DOH regulation that was published on August 17, 2021, several weeks after Lifespan announced its program, only provides for exemptions for a narrow set of medical conditions. *It does not provide healthcare workers in a DOH licensed healthcare facility with the possibility of a religious*

*exemption.*" (Emphasis added).  She also inquired about a job with another Rhode Island health care provider, but was told that "[our] stance regarding the COVID vaccine is that [we are] following whatever the states require us to do.  So if they end up accepting a religious exemption, then yes you can come on board and submit a request for your religious exemption."  Nurse L. was previously diagnosed with Covid-19.  She thus has natural immunity equal to or greater than that provided by a vaccine.

18.  Hospital Clerk M. is a Rhode Island medical school student who has a valid accepted religious exemption from her school as authorized by State law.  The hospital she clerks at (which constitutes here entire year of education) has not accepted her already-granted religious exemption, which will preclude her from meeting her medical school educational requirements.  Hospital Clerk M. was previously diagnosed with Covid-19. She thus has natural immunity equal to or greater than that provided by a vaccine.

19.  Dr. T. is employed in a Rhode Island medical practice with other physicians. His employer has not granted his requested religious exemption, stating that the Regulation "allows for only a medical exemption."

20.  Health Unit Coordinator L. is employed by another Rhode Island hospital. She submitted a religious exemption request, which was approved by the hospital.  She was to be subject to and agreed to the masking and twice a week testing requirements equally applicable to those with a medical exemption.  Then, on September 20, 2021 the hospital withdrew the exemption, stating, *inter alia*, that "you have been approved for an exemption from the COVID-19 vaccine based upon sincerely held religious beliefs.  . . . [T]he State of RI has implemented regulations and there is one part that causes [the] Hospital undo hardship to allow you to work.  In order for [the] Hospital to avoid fines

or other penalties, you will not be allowed to work without having the vaccine. As of October 1, 2021, you will be put on unpaid leave status pending a change to the legislation or you receiving the vaccine."

21. Each of the Plaintiffs are employed by or working for entities with fifteen (15) or more employees covered by Title VII of the Civil Rights Act of 1964, which mandates reasonable accommodation of sincerely held religious beliefs.

22. Each Plaintiff applied for and was denied a religious exemption from the Vaccine Mandate. Each rejection was based in whole or in part on the position that the Regulation outlawed any consideration or grant of a religious exemption.

23. Defendant Nicole Scott Alexander is the Director of the Rhode Island Department of Health, which promulgated the Vaccine Mandate regulation and whose department is charged with enforcing it. At all relevant times the Director has acted and is acting under color of state law. She is sued in her official capacity.

24. Defendant Daniel J. McKee is Governor of the State of Rhode Island. He authorized the Vaccine Mandate by signature through his Executive Counsel, and it was issued subsequent to his Executive Order 21-86. As Chief Executive he is responsible for the execution of the laws, including the Vaccine Mandate. The Governor at all relevant times has acted and is acting under color of state law. The Governor is sued in his official capacity.

## THE VACCINE MANDATE

25. Since the pandemic began over 18 months ago through October 1, 2021 Rhode Island's health care facilities and health care workers protected themselves and

their patients through social distancing, masking and testing.

26. These precautions continued and were deemed sufficient to protect once a vaccine was made available under an Emergency Use Authorization, and continue through the present.

27. The October 1 Vaccine Mandate changed that. It requires all health care workers in and outside of all health care facilities to become fully vaccinated by October 1, 2021. On that date, no health care facility may allow any worker to enter the facility who has not been vaccinated.

28. The Regulation subjects both health care facilities and health care providers with fines and/or loss of professional license for non-compliance.

29. The Regulation contains only a medical exemption, providing that "no health care worker or health care provider shall be required to receive the COVID-19 vaccine if a medical exemption applies, but such individuals must continue to comply with the provisions of §§ 8.3(A)(1) [testing 2x a week] and (2) [masking]."

30. Confirming the plain language of the Regulation the DOH website FAQ proclaims, *inter alia*: "4. Are there any exemptions? The sole exemption in the regulation is a medical exemption."[2]

_____

[2] While all agree with the plain meaning of the Regulation; namely, it does not allow a religious exemption, the DOH's own chief legal counsel agrees with Plaintiff's position here. In an August 31, 2021 email, the Executive Counsel opined that: "Section 8.3(D) of the regulations includes the medical exemption; and while the regulations themselves do not address a religious exemption, *that feature is likely required by constitutional jurisprudence so the rights themselves should be preserved and respected.*" (Email contained as *Exhibit B*). Why the Regulation itself does not respect and include what the Constitution requires remains unanswered. The result is that Rhode Island health care providers have wrongly denied Plaintiffs' religious exemption requests based upon an unlawful regulation.

31. The Regulation prohibits any health care facility or employer from considering or granting a religious exemption for a sincerely held religious belief against Covid-19 vaccination, and prohibits any health care worker or provider from receiving one.

32. The Regulation prohibits any health care facility or employer from offering the same reasonable accommodation to those seeking a religious exemption as they are required to offer to those seeking a medical exemption.

33. Perhaps realizing the legal infirmity of the Regulation's preclusion of religious exemptions, the Regulation contains an express severability clause, providing that "If any provision of these Regulations or the application thereof to any person or circumstance shall be held invalid, such invalidity shall not affect the provisions or application of these Regulations which can be given effect, and to this end the provisions of these Regulations are declared severable."

34. As such, the Regulation can remain operative with the required religious exemption, which would be given the same reasonable accommodation as the Regulation's medical exemption.

<u>Basis for Proceeding With Pseudonyms</u>

35. Plaintiffs wish to keep their identities anonymous to avoid harassment in the present environment and push to vaccinate everyone. They also do not wish to disclose sensitive personal health information protected by law concerning prior infection and vaccine status.

36. Plaintiffs reasonably fear exclusion by others unless vaccinated against their will.

37. The present constitutional and statutory issues before this Court in no way depend of the identity of the Plaintiffs. Since Plaintiffs were denied a requested religious exemption based in whole or in part on the Regulation, standing is met. The identity of Plaintiffs is irrelevant.

38. All Americans young, healthy, old, those with natural immunity from prior infection and even pregnant and breastfeeding women – all are being pressured by governments, businesses and educational institutions to submit to Covid-19 vaccination with no assessment of the risk or benefit for each individual. Now, even small children, at virtually no risk from the virus, are next in line with expected FDA approval of a vaccine for them imminent.

39. Perhaps not surprisingly, in denying a religious exemption request, one Rhode Island health care provider proclaimed: "Your request for a religious exemption or accommodation is not reasonable as it poses a direct threat to the health and safety of others in the workplace."

40. The President of the United States has proclaimed that the unvaccinated "can cause a lot of damage – and they are." And that "we've been patient,, but our patience is wearing thin. And your refusal has cost all of us."

41. With the leader of the free world casts serious aspersions on anyone who is unvaccinated, anonymity is a reasonable request, especially considering the pure legal questions presented by this Complaint.

## COUNT I

### FIRST AMENDMENT UNITED STATES CONSTITUTION
FREE EXERCISE CLAUSE
(42 U.S.C. § 1983)

42. Plaintiffs hereby re-allege and adopt each and every allegation in paragraphs 1-41 above as if fully set forth herein.

43. The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the State from abridging Plaintiffs' rights to free exercise of religion.

44. Plaintiffs have sincerely held religious beliefs that compel them to refuse the Covid-19 vaccination.

45. The Vaccine Mandate, on its face and as applied, targets Plaintiffs' sincerely held religious beliefs by not allowing them to apply for or obtain a religious exemption or by requiring the revocation of religious exemptions previously granted by their employer.

46. The Vaccine Mandate, on its face and as applied, impermissibly burdens Plaintiffs' sincerely held religious beliefs, compels them to abandon their beliefs or violate them under coercion, and forces Plaintiffs to choose between their religious convictions and the State's value judgment that their religious beliefs cannot be considered by employers.

47. The Vaccine Mandate strips Plaintiffs, adult medical professionals, of the right to religious exemption secured by state statute for college students – who can obtain an exemption by merely submitting "certificate signed by the pupil, if over eighteen (18)

years of age, stating that immunization . . . is contrary to that person's religious beliefs"
See R.I. Gen Laws § 16-38-2(a).  Indeed, one medical school plaintiff has secured such a
religious exemption, but the Vaccine Mandate precludes it from being honored by any
Rhode Island medical facility.

48.  The Vaccine Mandate, on its face and as applied, places Plaintiffs in an direct
conflict between compliance with the mandate and their sincerely held religious beliefs.

49.  The Vaccine Mandate, on its face and as applied, puts substantial pressure on
Plaintiffs to violate their sincerely held religious beliefs or face loss of their occupations,
professional standing, licenses, reputations, and ability to support their families.

50.  The Vaccine Mandate, on its face and as applied, is neither neutral nor
generally applicable as it grants the possibility of medical exemptions for reasons of
secular "health," but bars religious exemptions according to the State's value judgment
that physical health is less important than spiritual health.

51.  The Vaccine Mandate, on its face and as applied, thus targets Plaintiffs'
religious beliefs for disparate and discriminatory treatment.

52.  The Vaccine Mandate, on its face and as applied, creates a system of
individualized exemptions for preferred exemption requests based on physical health,
while discriminating against requests for exemption and accommodation based on
sincerely held religious beliefs.

53.  The Vaccine Mandate, on its face and as applied, is a religious gerrymander
that excludes sincerely held religious beliefs from any form of accommodation while
permitting state-favored medical exemptions.

54.  There is no legitimate, rational, or compelling interest in the Vaccine

Mandate's exclusion of an exemption and accommodations for sincerely held religious beliefs because those exempted for health ("medical exemption") are no less susceptible of contracting and spreading COVID (the prevention of which is the very reason for the Vaccine Mandate) than those who would be exempted for reasons of religion.

55. There is no legitimate, rational, or compelling interest in the Vaccine Mandate's exclusion of exemption and accommodations for sincerely held religious beliefs because of the Regulation's alternative requirements contained in 8.3 A.1. and A.2. of "wear[ing] a procedure mask or higher grade mask (e.g., KN95 or N95 in the course of their employment while inside a health care facility and shall be required to be tested at least two (2) times per week for COVID-19 via any COVID-19 test authorized by the FDA" are as much of a reasonable accommodations for health as they are for religion. Indeed, presently in *every* other State (except Maine) those reasonable accommodations are available to those with sincerely held religious beliefs against forced Covid-19 vaccination.

56. There is no legitimate, rational, or compelling interest in the Vaccine Mandate's exclusion of exemption and accommodations for sincerely held religious beliefs, and in particular those previously infected with Covid-19, because the natural immunity to Covid-19 conferred by prior infection is equal to or greater than that conferred by the vaccines (and thus vaccination serves no purpose); and vaccinating naturally immune individuals may cause more severe side effects or harm.

57. There is no legitimate, rational, or compelling interest in the Vaccine Mandate's exclusion of exemption and accommodations for sincerely held religious beliefs because vaccinated persons are being diagnosed with Covid-19, admitted to Rhode Island

-13-

hospitals, and dying since the rise of the Delta variant just like unvaccinated individuals. The DOH statistics reveal that in July and August 27.3% (157/576) of all Covid-19 hospitalizations were persons who had been fully vaccinated.  Additionally, 47.2% of all Covid-19 deaths (17/36)) were persons who had been fully vaccinated.  With cases, some 31.8% (3,333/10,467) were from people who are fully vaccinated.

58.  The Vaccine Mandate is not the least restrictive means of achieving an otherwise permissible government interest – which has been and can continue to be achieved by the masking and testing requirements mandated by Sections 8.3 A.1.  and A.2 of the Regulation.

59.  Indeed, the twice a week testing requirement for unvaccinated persons (with a medical exemption), but not vaccinated persons, will help to prevent transmission from asymptomatic unvaccinated health care workers, while untested, asymptomatic vaccinated health care workers (who the CDC represents can carry high viral loads) could unwittingly transmit Covid-19 to patients – directly contrary to the government's goal.

60.  The Vaccine Mandate, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship to Plaintiffs from violation of their sincerely held religious beliefs and the occupational, professional, social and economic consequences.

61.  Plaintiffs have no adequate remedy at law to prevent the continuing violation of their constitutional liberties and sincerely held religious beliefs.

## COUNT II
### SUPREMACY CLAUSE – UNITED STATES CONSTITUTION
### PREEMPTION OF STATE REGULATION BY TITLE VII
### (42 U.S.C. 1983)

62. Plaintiffs hereby re-allege and adopt each and every allegation in paragraphs 1-61 as if fully set forth herein.

63. Article VI, clause 22 of the United States Constitution provides that:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

64. The Vaccine Mandate, both facially and as applied, compels health care facilities in the State of Rhode Island to disregard Title VII of the Civil Rights Act of 1964's protection against employment discrimination on account of religion. The Regulation forbids any accommodation of religious belief and requires the revocation of previously granted religious exemptions from COVID-19 vaccination.

65. The Vaccine Mandate thus requires action (mandatory rejection of any religious exemption request) that federal law forbids – which renders the Vaccine Mandate null and void. *Mutual Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472, 486 (2013).

66. All of Plaintiffs' employers, or the health care facility for which they perform services, have 15 or more employees and are subject to the requirements of Title VII.

67. By attempting to preclude application of Title VII in Rhode Island in the case of mandatory Covid-19 vaccination, the Vaccine Mandate violates the Supremacy Clause.

68. The Vaccine Mandate purports to negate Title VII's requirement that employers provide reasonable accommodations to individuals with sincerely held religious

beliefs, and thereby prohibits consideration of religious exemption or accommodation requests.

69. By purporting to place themselves and their mandate outside the protections of both Title VII and the First Amendment, Defendants have violated the basic constitutional principle that "federal law is as much the law of the several States as are the laws passed by their legislatures." *Haywood v. Drown*, 556 U.S. 729, 734 (2009).

70. The Vaccine Mandate, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship to Plaintiffs from violation of their sincerely held religious beliefs and the occupational, professional, social and economic consequences pled above.

71. Plaintiffs have no adequate remedy at law for the continuing deprivation of their statutory rights under Title VII as secured by the Supremacy Clause.

## COUNT III
## FOURTEENTH AMENDMENT – UNITED STATES CONSTITUTION
(42 U.S.C. § 1983)

72. Plaintiffs hereby re-allege and adopt each and every allegation in paragraphs 1-71 above as if fully set forth herein.

73. The Fourteenth Amendment to the United States Constitution  guarantees Plaintiffs' right to equal protection under the law.

74. The Vaccine Mandate, on its face and as applied, is an unconstitutional abridgment of Plaintiffs' right to equal protection, is not neutral, and specifically targets Plaintiffs' sincerely held religious beliefs for discriminatory and unequal treatment as compared with the medical exemptions favored by the State's impermissible, value

judgment.

75. The Vaccine Mandate, on its face and as applied, is an unconstitutional abridgement of Plaintiffs' right to equal protection because it permits the State to treat Plaintiffs differently from similarly situated healthcare workers solely on the basis of Plaintiffs' sincerely held religious beliefs.

76. State law specifically grants vaccine mandate exemptions to students, but the Regulation denies the same to health care workers, such as Plaintiffs.

77. The Vaccine Mandate, on its face and as applied, singles out Plaintiffs for selective treatment based upon their sincerely held religious objections to the Covid-19 vaccines.

78. The Vaccine Mandate, on its face and as applied, creates a system of classes and categories that improperly accommodates exemptions for the class of healthcare workers concerned with bodily health while denying exemption to the class of health care workers concerned with spiritual health above bodily health, including all the Plaintiffs herein.

79. The Vaccine Mandate, arbitrarily and capriciously attempts to deny Plaintiffs and others similarly situated the protection for religion and the requirement of religious accommodation under Title VII, while leaving untouched protections under the same statutes for other protected classes, including by allowing exemptions for reasons of "health," but not religion.

80. The Vaccine Mandate arbitrarily and capriciously denies to adult medical workers with expert knowledge of vaccination and its risks the same religious exemption from vaccination available to any college student under R.I. Gen. Laws § 16-38-2(a).

81. By purporting to negate statutorily required religious accommodations from consideration in the State of Rhode Island, Defendants, via the Vaccine Mandate, have singled out for disparate treatment the specific class of healthcare employees whose motive for seeking exemption from vaccination is religious rather than medical.

82. Several Plaintiffs have previously had Covid-19, and therefore possess natural immunity at a level no less than, and likely far more than, the immunity purportedly offered by available Covid-19 vaccines.

83. There is no rational, legitimate, or compelling interest in the Vaccine Mandate's application of different standards to different, similarly situated groups in the field of healthcare.

84. The Vaccine Mandate, on its face and as applied, discriminates between religion and nonreligion by allowing nonreligious exemptions to the Vaccine Mandate while prohibiting religious exemptions.

85. The Vaccine Mandate, on its face and as applied, is a "status-based enactment divorced from any factual context" and "a classification of persons undertaken for its own sake," which "the Equal Protection Clause does not permit." *Romer v. Evans*, 517 U.S. 620, 635 (1996). The Vaccine Mandate, on its face and as applied, "identifies persons by a single trait [religious beliefs] and then denies them protections across the board." *Id.* at 633.

86. The Vaccine Mandate, on its face and as applied, by allowing medical exemptions while denying religious exemptions, is a "disqualification of a class of persons from the right to seek specific protection [for their religious beliefs]." *Id.*

87. "A law declaring that in general it shall be more difficult for one group of

-18-

citizens than for all others to seek [an exemption from the COVID-19 Vaccine Mandate] is itself a denial of equal protection of the laws in the most literal sense." *Id.* The Vaccine Mandate, on its face and as applied, is such a measure.

88.   The Vaccine Mandate, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship to Plaintiffs from violation of their sincerely held religious beliefs and the occupational, professional, social and economic consequences plead above.

89.   Plaintiffs have no adequate remedy at law for the continuing deprivation of their rights under the Equal Protection Clause.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for relief as follows as to all Counts:

(A)   A temporary restraining order and/or preliminary injunction, followed by a permanent injunction, restraining and enjoining the State, and its officers, agents, employees, attorneys and successors in office, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with the Vaccine Mandate such that:

(1)   The Vaccine Mandate is suspended in operation to the extent that the Department of Health is barred from enforcing any requirement that employers deny religious exemptions from Covid-19 vaccination or that they revoke any exemptions employers already granted before the Vaccine Mandate;

(2)   The Department of Health is barred from interfering in any way with the granting of religious exemptions from Covid19 vaccination going forward;

(3)  The Department of Health is barred from taking any action, disciplinary or otherwise, against the licensure, certification, residency, admitting privileges or other professional status or qualification of any of the Plaintiffs on account of their seeking or having obtained a religious exemption from mandatory Covid-19 vaccination.

(4) The Department of Health is barred from fining or taking any action against the licensure of any Health Care Facility or Provider for considering and granting religious exemptions and reasonable accommodations to the Vaccine Mandate.

(B)  A declaratory judgment declaring that the Vaccine Mandate, both on its face and as applied by Defendants, is unconstitutional, unlawful, and unenforceable in that:

(1)  the Vaccine Mandate violates the Free Exercise Clause of the First Amendment by depriving Plaintiffs and others similarly situated of the free exercise of religion under a measure that is neither neutral nor generally applicable but rather favors secular over religious reasons for exemption from Covid-19 vaccination,

(2)  the Vaccine Mandate violates the Supremacy Clause by purporting to strip Plaintiff and others similarly situated of statutory and constitutional protections for religion and reasonable accommodation under federal law;

(3)  the Vaccine Mandate violates the Equal Protection Clause of the Fourteenth Amendment by purporting to strip Plaintiffs and others similarly situated of state and federal statutory protection from discrimination in the matter of vaccination solely because of the religious grounds on which Plaintiffs seek protection.

(C)   An award of reasonable costs and expenses of this action, including a reasonable attorney's fee, in accordance with 42 U.S.C. § 1988; and

(D)   Such other and further relief as the Court deems equitable and just under the circumstances.

Plaintiffs
By Their Attorney,

Joseph S. Larisa, Jr. (#4113)
LARISA LAW, LLC
50 South Main Street, Suite 311
Providence, RI  02903
(401) 743-4700
(401) 633-6296 (fax)

DATED:  September 23, 2021

## VERIFICATION

I, DR. T., _____, am over the age of 18 and am a Plaintiff in this action. The allegations that pertain to me in this VERIFIED COMPLAINT are true and correct, based upon my personal knowledge (unless otherwise indicated), and if called upon to testify as to their truthfulness, I would and could do so competently. I declare under penalties of perjury, under the laws of the United States, that the foregoing statements are true and correct.

Executed on:        9|22|21

## VERIFICATION

I, NURSE L., Nurse L., am over the age of 18 and am a Plaintiff in this action. The allegations that pertain to me in this VERIFIED COMPLAINT are true and correct, based upon my personal knowledge (unless otherwise indicated), and if called upon to testify as to their truthfulness, I would and could do so competently. I declare under penalties of perjury, under the laws of the United States, that the foregoing statements are true and correct.

Executed on: 9 / 22 / 21

## VERIFICATION

I, HOSPITAL CLERK M., Hosp Clerk M., am over the age of 18 and am a Plaintiff in this action. The allegations that pertain to me in this VERIFIED COMPLAINT are true and correct, based upon my personal knowledge (unless otherwise indicated), and if called upon to testify as to their truthfulness, I would and could do so competently. I declare under penalties of perjury, under the laws of the United States, that the foregoing statements are true and correct.

Executed on:      9 | 22 | 21

## VERIFICATION

I, HEALTH UNIT COORDINATOR L., ~~HUC L~~, am over the age of 18 and am a Plaintiff in this action. The allegations that pertain to me in this VERIFIED COMPLAINT are true and correct, based upon my personal knowledge (unless otherwise indicated), and if called upon to testify as to their truthfulness, I would and could do so competently. I declare under penalties of perjury, under the laws of the United States, that the foregoing statements are true and correct.

Executed on:

9.22.21

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of September, 2021 I caused to be sent via email (with summons or waiver to follow) a true and accurate copy of the within Verified Complaint to attorneys for the following parties:

Michael Field, Esq.
Office of the Attorney General
Mfield@riag.ri.gov

Claire Richards, Esq.
Executive Counsel to the Governor
Claire.Richards@governor.ri.gov

Ken Alston, Esq.
DOH Chief Legal Counsel
kenny.alston@ohhs.ri.gov.

A

**216-RICR-20-15-8**

# TITLE 216 – DEPARTMENT OF HEALTH

## CHAPTER 20 – INFORMATION FOR HEALTH CARE PROFESSIONALS

## SUBCHAPTER 15 - INFORMATION FOR HEALTH CARE PROFESSIONALS

PART 8 – REQUIREMENT FOR IMMUNIZATION AGAINST COVID-19 FOR ALL WORKERS IN LICENSED HEALTH CARE FACILITIES AND OTHER PRACTICING HEALTH CARE PROVIDERS

## 8.1   Authority

A.    These regulations are promulgated pursuant to the authority conferred under R.I. Gen. Laws §§ 23-1-1 and 23-1-17 and are established for the purpose of requiring health care workers and health care providers to be vaccinated against COVID-19.

## 8.2   Definitions

A.    Wherever used in this Part, the terms listed below shall be construed in the following manner:

1.    "COVID-19" means the new disease caused by novel coronavirus SARS-CoV-2.

2.    "COVID-19 vaccine" means any vaccine against COVID-19 that is authorized by the U.S. Food and Drug Administration or World Health Organization.

3.    "Department" or "RIDOH" means the Rhode Island Department of Health.

4.    "Health care facility" means a facility as defined in R.I. Gen. Laws § 23-17-2(8), as well as assisted living residences, as defined in R.I. Gen. Laws § 23-17.4.-2(4), and adult daycare programs, as defined in R.I. Gen. Laws § 23-1-52, and clinical laboratories, as defined in R.I. Gen. Laws § 23-16.2-2(2) notwithstanding the provisions of R.I. Gen. Laws § 23-17-2(8).

5.    "Health care worker" means any person who is temporarily or permanently employed by or at, or who serves as a volunteer in, or has an employment contract with, a health care facility, and has or may have direct contact with a patient in that health care facility. This may include, but not be limited to, a physician, physician assistant, nurse, nursing assistant, therapist, technician, clinician, behavioral analyst, social worker,

occupational, physical or speech therapist, phlebotomist, emergency medical service practitioner, dental personnel, pharmacist, laboratory personnel, autopsy personnel, students and trainees, contractual staff not employed by the health-care facility; other health care providers, including those who have privileges at, but are not employed by, the health care facility; and persons (e.g., clerical, dietary, housekeeping, laundry, security, maintenance, administrative, billing, and volunteers) not directly involved in patient care but potentially exposed, in the course of employment, to infectious agents that can be transmitted from person to person. This term shall not apply to a patient's family member or friend who visits or otherwise assists in the care of that patient in a health care facility.

6.    "Health care provider" means any person licensed by the Department to provide or otherwise lawfully providing health care services, including, but not limited to, a physician, dentist, nurse, optometrist, podiatrist, physical therapist, social worker, pharmacist, emergency medical service practitioner, or psychologist, provided such person is either directly involved in patient care or potentially exposed to infectious agents that can be transmitted from person to person.

7.    "Vaccinated" means a person has received all recommended dose(s) of a COVID-19 vaccine authorized by the U.S. Food and Drug Administration (FDA) or World Health Organization or all recommended dose(s) of another COVID-19 vaccine approved by the Department (e.g., Novavax).

## 8.3    Requirement to be vaccinated against COVID-19

A.    In addition to complying with applicable state and federal laws or regulations, including any applicable standards published by the Occupational Safety and Health Administration (OSHA), all health care workers in licensed health care facilities and health care providers who are not vaccinated must, as applicable, comply with the following:

1.    Until October 1, 2021, all health care workers who are not vaccinated shall be required to wear a procedure mask or higher-grade mask (e.g., KN95 or N95) in the course of their employment while inside a health care facility and shall be required to be tested at least two (2) times per week for COVID-19 via any COVID-19 test authorized by the FDA.

2.    Until October 1, 2021, all health care providers who are not otherwise categorized as health care workers and who are not vaccinated shall be required to wear a procedure mask or higher-grade mask (e.g., KN95 or N95) in the course of their employment.

3.     By October 1, 2021, all health care workers and health care providers must be vaccinated, subject to a medical exemption set forth in Section 8.3(D) of this Part.

B.     Proof of vaccination must be entered into the Rhode Island Child and Adult Immunization Registry. Health care workers and health care providers who are vaccinated in Rhode Island will have this done automatically by the vaccination administrator. Health care workers and health care providers who are vaccinated outside of Rhode Island must complete the form available at https://health.ri.gov/forms/records/COVID-Immunization-Record-Correction-Request.pdf as proof of vaccination and email the completed form to RIDOH.RICAIR@health.ri.gov.

C.     As of October 1, 2021, health care facilities shall deny entrance to any health care workers who are not vaccinated, subject to a medical exemption set forth in § 8.3(D) of this Part.

D.     No health care worker or health care provider shall be required to receive the COVID-19 vaccine if a medical exemption applies, but such individuals must continue to comply with the provisions of §§ 8.3(A)(1) and (2) of this Part.

1.     A health care worker or health care provider shall be medically exempt from being required to be vaccinated provided that a licensed physician, physician assistant or advanced practice registered nurse signs a medical exemption stating that the health care worker or health care provider is exempt from the COVID-19 vaccine because of medical reasons, in accordance with Advisory Committee on Immunization Practices (ACIP) guidelines and determined as acceptable by the facility.

## 8.4   Violations

A.     Health care facilities and health care providers that violate any provisions of this Part are subject to administrative action by the Department, and any other action provided for under applicable law and regulations, including R.I. Gen. Laws § 23-1-25, in addition to any action against the professional and/or facility license, as applicable.  Health care facilities shall have seven (7) days from the promulgation of this Part to implement measures necessary to ensure compliance with health care worker testing requirements.

B.     Each health care facility shall provide at no financial charge an adequate supply of procedure masks or higher-grade mask (e.g., KN95 or N95) to any health care worker and shall ensure the facility's compliance with § 8.3(A) of this Part, subject to a medical exemption set forth in § 8.3(D) of this Part.

## 8.5   **Severability**

If any provision of these Regulations or the application thereof to any person or circumstance shall be held invalid, such invalidity shall not affect the provisions or application of these Regulations which can be given effect, and to this end the provisions of these Regulations are declared severable.

**216-RICR-20-15-8**
# TITLE 216 - DEPARTMENT OF HEALTH
## CHAPTER 20 - COMMUNITY HEALTH
## SUBCHAPTER 15 - INFORMATION FOR HEALTH CARE PROFESSIONALS
PART 8 - REQUIREMENT FOR IMMUNIZATION AGAINST COVID-19 FOR ALL
WORKERS IN LICENSED HEALTH CARE FACILITIES AND OTHER PRACTICING
HEALTH CARE PROVIDERS

Type of Filing: Adoption

## Agency Signature

E-SIGNED by Jacqueline Kelley
on 2021-08-17 15:38:40 EDT                    August 17, 2021

_____        _____
Agency Head Signature                         Agency Signing Date

## Governor's Signature

Claire Richards

_____
Signed By

E-SIGNED by Office of the Governor
on 2021-08-17 16:00:21 EDT                  August 17, 2021

_____        _____
Governor or Designee                          Governor Signing Date

## Department of State

08/17/2021

_____
Regulation Effective Date

 Z.G.                          August 17, 2021

_____        _____
Department of State Initials                   Department of State Date

# B

From: **Alston, Kenny (OHHS) <Kenny.Alston@ohhs.ri.gov>**
Date: Tue, Aug 31, 2021 at 5:23 PM
Subject: RE: [EXTERNAL] : Re: Vaccine Mandate Question
To: ███████████████████ Goulet, Morgan (OHHS)
**<Morgan.Goulet@ohhs.ri.gov>**
Cc: Mello, Laura (RIDOH) **<Laura.Mello@health.ri.gov>**, Valletta, Donna (RIDOH)
**<Donna.Valletta@health.ri.gov>**

Good evening, Dr. McCoy,

I am legal counsel for the State Board of Chiropractic Examiners. You have asked whether I agree with my brother counsel with respect to his interpretation of 216-RICR-20-15-8, and I do – notwithstanding the fact that the individual circumstances of some chiropractors may take them outside the definition of "health care providers," the vast majority of chiropractors will currently be HCPs and will, therefore, be subject to the regulations' vaccination mandates.

With respect to your other questions: Section 8.3(D) of the regulations includes the medical exemption; and while the regulations themselves do not address a religious exemption, that feature is likely required by constitutional jurisprudence so the rights themselves should be preserved and respected.

 Regards,

JKA


**Kenny Alston**

Executive Counsel

Rhode Island Department of Health

Three Capitol Hill, Room 404
Providence, RI 02908

Tel 401-222-1685