UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DR. T., NURSE L., HOSP. CLERK M., and HEALTH UNIT COORDINATOR L.,<br><br>　　Plaintiffs,<br><br>　　v.<br><br>NICOLE ALEXANDER-SCOTT, in her official capacity as Director of the Rhode Island Department of Health, and DANIEL J. MCKEE in his official capacity as Governor of the State of Rhode Island,<br><br>　　Defendants. | C.A. No. 1:21-cv-00387-MSM-LDA |

## ORDER

Mary S. McElroy, United States District Judge.

### I.　INTRODUCTION

The plaintiffs in this matter, all healthcare workers, seek injunctive relief against the enforcement of Rhode Island Department of Health ("RIDOH") Emergency Regulation 216-RICR-20-15-8, promulgated August 17, 2021, which requires all healthcare workers, except those meeting a very narrow medical exception, to be vaccinated against COVID-19 by October 1, 2021.  The plaintiffs claim that because this Regulation does not include an opportunity for a healthcare worker to obtain a religious exemption to vaccination, it violates the United States Constitution and Title VII of the Civil Rights Act of 1964.

Before the Court is the plaintiffs' motion for a temporary restraining order

1

("TRO"). They ask the Court to enjoin the RIDOH from enforcing any requirement that employers deny religious exemptions from COVID-19 vaccination or that they revoke any exemptions employers already granted before the Regulation; that the RIDOH be barred from interfering with the granting of religious exemptions going forward; and from taking any disciplinary action against the plaintiffs for seeking or having obtained a religious exemption.

This matter was filed on September 23, 2021. The Court conferenced the matter with the parties the following day, at which time both parties agreed that the Court should schedule a hearing on the motion for a TRO and not on a preliminary injunction. Argument on the motion for a TRO was held on September 29, 2021, at which time the plaintiffs asked that the Court, if it was to deny the request for a TRO, also issue an order denying a preliminary injunction.

The defendants objected to the consideration of a preliminary injunction at this juncture, citing the desire to further develop the factual record. The Court finds that the defendants would be unduly prejudiced if not afforded this opportunity. The plaintiffs filed this action eight days before the Regulation's vaccination deadline though the Regulation was announced on August 17, 2021. The defendants prepared themselves for an expedited hearing on the TRO but, given the issues that came up in that hearing, now believe that they need more time to determine if they wish to present additional evidence or further briefing at a hearing on the plaintiffs' motion for a preliminary injunction.

The Court therefore denies the plaintiffs' request to issue a ruling on their

request for a preliminary injunction and instead proceeds to decide their motion for a TRO.

## II.   LEGAL STANDARD

Temporary restraining orders are an extraordinary remedy; they "must be used sparingly and only in cases where the need for extraordinary equitable relief is clear and plain." *Northwest Bypass Grp. v. U.S. Army Corps. of Eng'rs*, 453 F. Supp. 2d 333, 338 (D.N.H. 2006) (quoting *Augusta News Co. v. News Am. Pub., Inc.*, 750 F. Supp. 28, 31 (D. Me. 1990)). To determine whether to grant a TRO, the Court considers four well-established prongs:

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.

*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 15 (1st Cir. 1996). The first prong is absolutely necessary; without establishing a strong likelihood of prevailing on the merits as opposed to a mere possibility of success, the other prongs are irrelevant. *Sindicato Puertorriqueno de Trabajadores v. Fortuno*, 699 F.3d 1, 10 (1st Cir. 2012) (quoting *Respect Maine PAC v. McKee*, 622 F.3d 13, 15 (1st Cir. 2010)). The plaintiffs bear the burden of demonstrating that these factors weigh in their favor. *Nieves-Marquez v. P.R.*, 353 F.3d 108, 120 (1st Cir. 2003).

### III.   DISCUSSION

The plaintiffs raise the following claims:

- That the Regulation impermissibly burdens the plaintiffs' right to free exercise of religion under the First Amendment to the United States Constitution.

- That the Regulation compels healthcare facilities to disregard Title VII of the Civil Rights Act of 1964's protection against employment discrimination on the basis of religion.

- That the Regulation is an unconstitutional abridgment of the plaintiffs' right to equal protection under the Fourteenth Amendment to the United States Constitution.

The Court finds that the plaintiffs have not demonstrated a likelihood of success on the merits of these claims.

As to the constitutional claims, courts have held for over a century that mandatory vaccination laws are a valid exercise of a state's police powers, and such laws have withstood constitutional challenges. *See, e.g.*, *Employment Div., Dep't of Human Res. Of Ore. v. Smith*, 494 U.S. 872, 889 (1990) (identifying "compulsory vaccination laws" as among the neutral, generally applicable laws that did not require religious exemptions under the First Amendment); *Prince v. Massachusetts*, 321 U.S. 158, 166-67, n.12 (1944) (noting that the right to practice one's religion freely "does not include liberty to expose the community … to communicable disease"); *Zucht v. King*, 260 U.S. 174, 176-77 (1922) (holding that there was no equal protection

4

violation where child prohibited from attending school without vaccinations, and explaining that "in the exercise of the police power reasonable classification may be freely applied, and that regulation is not violative of the equal protection clause merely because it is not all- embracing"); *Jacobson v. Massachusetts*, 197 U.S. 11, 25-27 (1905) (holding that mandatory vaccination laws do not offend "any right given or secured by the Constitution," and that a state's police power allows imposition of "restraints to which every person is necessarily subject for the common good").

The plaintiffs' second claim for relief alleges that the Regulation compels heathcare facilities in the State of Rhode Island to disregard Title VII of the Civil Rights act and thereby violates the Supremacy Clause to the U.S. Constitution, Art. VI, cl. 2. The defendants argue in response that the Supremacy Clause does not create a private right of action and that the Regulation does not compel healthcare facilities to refuse to consider religious accommodation and, therefore, does not violate Title VII.

The Supreme Court has held that reading a private right of action into the Supremacy Clause would be "strange" given the Constitution's "silen[ce] regarding who may enforce federal laws in court, and in what circumstances they may do so," and that the result of permitting a private right of action would be to "significantly curtail [Congress's] ability to guide the implementation of federal law." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 325-26 (2015).

However, the Title VII analysis cannot end there. This Court must address the question of whether the Regulation is preempted by Title VII. Federal law

5

preempts state law (1) where Congress "preempt[s] state law by so stating in express terms"; (2) where "the scheme of federal regulation is sufficiently comprehensive to make the reasonable inference that Congress 'left no room' for supplementary state regulation"; and (3) only where there is an actual conflict between the two because compliance with both is "a physical impossibility" or because state law stands "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280 (1987).

Importantly, the Supreme Court has emphasized that there is a strong presumption that "state or local regulation of matters related to health and safety is not invalidated under the Supremacy Clause." *Hillsborough Cty., Fla.* v. *Automated Med. Lab's, Inc.*, 471 U.S. 707, 715 (1985). Federal preemption of a state health and safety regulation will be found only in situations where it is "the clear and manifest purpose of Congress." *CSX Transp., Inc.* v. *Easterwood*, 507 U.S. 658, 664 (1993) (courts "interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption.").

Preemption can be either by an express provision of a statute or conflict preemption. "Express preemption occurs when Congress (or an agency) enacts a statute (or a regulation) 'containing an express preemption provision.'" *Estes v. ECMC Grp., Inc.*, 2021 U.S. Dist. LEXIS 138180, *39-40, 2021 DNH 117, 2021 WL 3146240 (D.N.H. July 26, 2021). Title VII clearly does not expressly preempt state public-health regulations and the plaintiffs have not argued otherwise. Instead, they argue that Rhode Island's Regulation "directly interferes with Plaintiffs' federal-law

rights under Title VII." (ECF No. 2 at 4). While the plaintiffs argue that the Regulation "outright forbids Plaintiffs from even seeking (or retaining already granted) reasonable accommodations from Covid-19 vaccination in accord with their sincerely held religious beliefs" (ECF No. 2 at 5-6) that is not an accurate reading of the text of the Regulation. Nothing in the language prevents any employer from providing a reasonable accommodation to an employee who seeks one in accord with their sincerely held religious beliefs. Indeed, the Regulation is silent on the issue of religious exemptions. Title VII requires employers to accommodate religious beliefs, practices, or observances only to the extent that doing so would not impose "undue hardship" on the employer. *See* 42 U.S.C. § 2000e(j)a. While the Regulation may make it more difficult for employers to accommodate religious objections; it does not create a "physical impossibility." Although the plaintiffs contended at oral argument that the Regulation makes reasonable accommodation virtually impossible, there is no evidence before the Court at this stage that would allow the finding of a likelihood of success on the merits on that claim. *See Cloutier v. Costco Wholesale*, 311 F. Supp. 2d 190, 198 (D. Mass. 2004), *aff'd*, 390 F.3d 126 (1st Cir. 2004) ("[T]he accommodation offered by the employer does not have to be the best accommodation possible, and the employer does not have to demonstrate that alternative accommodations would be worse or impose an undue hardship."). Therefore, the plaintiffs have failed to make out a case of likelihood of success on the merits on their Title VII claim.

Because the Plaintiffs have failed to establish a likelihood of success on the merits as to any of their claims, the Court does not need to address the remaining factors for injunctive relief. *See Fortuno*, 699 F.3d at 10.

## IV.   CONCLUSION

For the foregoing reasons, the plaintiffs' Motion for a Temporary Restraining Order (ECF No. 2) is DENIED.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge
September 30, 2021